**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

NOVACLOUD LICENSING, LLC,

        *Plaintiff*,

    v.

INTERNATIONAL BUSINESS MACHINES
CORP.,

        *Defendant*.

Case No. 2:25-cv-00700-JRG-RSP

JURY TRIAL DEMANDED

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S MOTION TO
DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

III.    LEGAL STANDARD ..................................................................................................... 3

IV.     CLAIMS 10–11, 13–15, AND 17 OF THE '348 PATENT ARE DIRECTED TO NON-STATUTORY SUBJECT MATTER UNDER 35 U.S.C. § 101 ..................................... 4

V.      ALL ASSERTED CLAIMS OF THE '348 PATENT ARE NOT PATENT ELIGIBLE UNDER THE TWO-STEP *ALICE* INQUIRY ............................................................ 5

   A.   *Alice* Step One:  The Claims Are Directed to an Abstract Idea ......................................... 6

     1.   The Claims Are Focused on the Abstract Idea of Monitoring and Recording Data Relative to Other Data ........................................................................................... 6

     2.   Controlling Precedent Holds That Monitoring and Recording Data Is a Patent-Ineligible Abstract Idea ........................................................................................... 7

     3.   Nothing in the Claims Can Save Them at Step One ............................................. 9

   B.   *Alice* Step Two:  The Claims Lack an Inventive Concept ................................................ 10

     1.   Claim 1 Lacks an Inventive Concept ................................................................... 10

     2.   The Remaining Claims Lack an Inventive Concept ............................................. 11

   C.   Dismissal Is Appropriate ..................................................................................................... 13

VI.     NOVACLOUD'S PRE-SUIT WILLFUL AND INDUCED INFRINGEMENT CLAIMS SHOULD BE DISMISSED ......................................................................................... 14

VII.    CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Affinity Labs of Tex., LLC v. DirecTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)................................................................................6

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014)........................................................................1, 5, 6, 10, 11

*Allvoice Devs. US, LLC v. Microsoft Corp.,*
612 F. App'x 1009 (Fed. Cir. 2015) ........................................................................4

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
841 F.3d 1288 (Fed. Cir. 2016)................................................................................7

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG,*
No. 2:23-cv-172-JRG, 2022 WL 610796 (E.D. Tex. Jan. 24, 2022)...................15

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
788 F.3d 1371 (Fed. Cir. 2015)..............................................................................10

*Automation Middleware Sols., Inc. v. Invensys Sys., Inc.,*
No. 2:15-cv-00898-RWS, 2017 WL 11573945 (E.D. Tex. Mar. 31, 2017) ............5

*In re Bilski,*
545 F.3d 943 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593
(2010) ........................................................................................................................5

*BSG Tech LLC v. BuySeasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)........................................................................11, 12

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019)..........................................................................3, 12

*Cisco Sys., Inc. v. Uniloc 2017 LLC,*
813 F. App'x 495 (Fed. Cir. 2020) ..........................................................................3

*Commil USA, LLC v. Cisco Sys., Inc.,*
575 U.S. 632 (2015)................................................................................................14

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014)................................................................................8

*Credit Acceptance Corp. v. Westlake Servs.,*
859 F.3d 1044 (Fed. Cir. 2017)..............................................................................13

*CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.,*
No. 2:23-cv-311-JRG, 2024 WL 1219725 (E.D. Tex. Mar. 20, 2024)...................15

*Dialect, LLC v. Bank of Am., N.A.,*
No. 2:24-cv-00207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 4, 2024)...........3, 4, 14, 15

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ........................................................................4, 5

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
  946 F.3d 1367 (Fed. Cir. 2020) ............................................................................14

*Electric Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ..............................................................................8

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..............................................................................9

*In re Gale*,
  856 F. App'x 887 (Fed. Cir. 2021) ..........................................................................7

*Geoscope Techs. Pte. Ltd. v. Google LLC*,
  2025 WL 1276235 (Fed. Cir. May 2, 2025) ............................................................8

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*,
  2021 WL 4555802 (W.D. Tex. Oct. 4, 2021) ........................................................15

*In re Kollar*,
  286 F.3d 1326 (Fed. Cir. 2002) ..............................................................................4

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829 (E.D. Tex. 2014) ......................................................................9

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017) ..............................................................................5

*In re Nuijten*,
  500 F.3d 1346 (Fed. Cir. 2007) ..............................................................................4

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ..............................................................................10

*Realtime Data LLC v. Array Networks Inc.*,
  2023 WL 4924814 (Fed. Cir. Aug. 2, 2023) ............................................................9

*Secured Mail Sols. LLC v. Universal Wilde*,
  873 F.3d 905 (Fed. Cir. 2017) ................................................................................3

*Signode Indus. Grp. LLC v. Samuel, Son & Co.*,
  No. 2:24-CV-00080-JRG, 2024 WL 3543408 (E.D. Tex. July 25, 2024) ..............14

*Simio, LLC v. FlexSim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020) ............................................................................14

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016) ............................................................................10

*Torus Ventures LLC v. Cawley Partners, LLC*,
  No. 2:24-cv-00552-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025) .................3, 6, 11, 14

*Touchstream Techs., Inc. v. Altice USA, Inc.*,
   No. 2:23-cv-00060-JRG, 2024 WL 1117930 (E.D. Tex. Mar. 14, 2024)................................15

*Trinity Info. Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ........................................................................................12

*Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..............................................................................8, 10, 11

*United Servs. Auto. Ass'n v. PNC Bank, N.A.*,
   139 F.4th 1332 (Fed. Cir. 2025) .......................................................................................13

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
   100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016) ......................8

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) .............................................................................................6

## I.    INTRODUCTION

Plaintiff NovaCloud Licensing ("NovaCloud") asserts that Defendant International Business Machines Corporation ("IBM") infringes six patents.  NovaCloud's infringement allegations, and all asserted patents, suffer from fatal defects.  This motion addresses three such defects:  (1) certain asserted claims of U.S. Patent No. 8,407,348 ("the '348 patent") are directed to non-statutory subject matter contrary to 35 U.S.C. § 101; (2) because all asserted claims of the '348 patent merely are directed to an abstract idea lacking any inventive concept, the claims fail the two-step test for eligibility articulated in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); and (3) because IBM had no pre-suit notice of all six asserted patents, there is no plausible basis to allege pre-suit willful and induced infringement.

**'348 Patent.**  For multiple reasons, all asserted claims of the '348 patent are patent ineligible.  To start, at least claims 10, 11, 13–15, and 17 are system claims but fail to claim tangible or physical subject matter, and thus are directed to non-statutory subject matter in violation of Section 101.  Furthermore, all asserted claims of the patent are directed to an abstract idea: monitoring and recording data relative to other data.  For instance, independent claim 1 begins by reciting a "method of monitoring a user's usage of network service," followed by three steps of "recording" data, and ends there.  These recording steps merely use functional language that describes how humans have long "recorded" data in their mind or with a pen and paper.  Nothing in any of the claims connects any of the recording steps with another, and nothing is done with or to the data to transform it into something more or different.  In addition, the claims recite no technologically innovative elements to carry out these functions.  At bottom, all of the claims are patent ineligible and the '348 patent should be dismissed from this case.

**Pre-Suit Willful and Induced Infringement.**  NovaCloud offers no plausible factual allegations that IBM had knowledge of the asserted patents—and infringement of them—before

the filing of this suit.  Because NovaCloud has failed to plausibly allege this requisite element, NovaCloud's claims for pre-suit willful and induced infringement should be dismissed.

## II.    BACKGROUND

NovaCloud accuses IBM of direct, induced, and willful infringement of the '348 patent and five other patents.  Dkt. 1 ¶¶ 65–106.  As to the '348 patent, NovaCloud asserts claims 1–3, 5–15, and 17.  *See* Sept. 19, 2025 Infringement Contentions.

The '348 patent is directed to monitoring and recording data about the use of connections on a network.  '348 patent, col. 1 ll. 18–21.  In its "Background" section, the '348 patent states that a network operator "supplies connections across" their network to users, where a "connection" is referred to as a "service."  *Id.* at col. 1 ll. 28–30, 45–46.  It further states that "[w]hen a user buys a connection they will typically negotiate a Service Level Agreement (SLA), which defines various parameters and limits of the connection."  *Id.* at col. 1 ll. 30–33.  It also acknowledges that there are "known monitoring systems that gather statistics with respect to the utilisation" of a network service.  *Id.* at col. 1 ll. 54–55.  In its "Summary" of invention section, the specification describes the patent's focus on recording data about network service usage, *e.g.*, "[t]he data values collected over the reco[r]ding period provide the operator with sufficient information so that it can determine whether a[n] SLA is being complied with."  *Id.* at col. 2 ll. 12–14.

Independent claim 1 of the '348 patent, for example, recites:

A method of monitoring a user's usage of a network service, comprising:

***recording*** a length of time that a service in the network was considered active relative to a predefined activity threshold value;

***recording*** an average loading of the network service during the time that the network service was considered active relative to the activity threshold value; and

***recording*** a length of time in which the network service was considered saturated relative to a predefined saturation threshold value.

*Id.* at col. 9 ll. 18–28.[1]   As seen above, claim 1 recites monitoring the use of a network service by recording three data values: (1) how long the service was considered "active," (2) the service's "average loading" during that window, and (3) how long the service was considered "saturated." Each recording, moreover, is relative to "predefined" threshold values (*i.e.*, a "predefined activity threshold value" or a "predefined saturation threshold value").   As detailed below, each of the asserted claims of the '348 patent focus on this same concept of monitoring use of a network service by recording data.   *Infra* Section V.B.

## III.   LEGAL STANDARD

Dismissal on the basis of ineligibility under 35 U.S.C. § 101 is appropriate where "there are no factual allegations that, taken as true, prevent resolving the . . . question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (cleaned up).   The Federal Circuit has "'repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.'"   *Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-cv-00552-JRG, 2025 WL 1799327, at *10 (E.D. Tex. June 30, 2025) (citation omitted).   "[C]onclusory statements regarding eligibility" need not be accepted as true and "d[o] not preclude dismissal."   *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498–99 (Fed. Cir. 2020).   Nor does a court need to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde*, 873 F.3d 905, 913 (Fed. Cir. 2017) (citation omitted).

In addition, "[t]o sufficiently plead pre-suit willful infringement, a plaintiff must plausibly allege that the defendant knew of an asserted patent before the plaintiff filed the lawsuit."   *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-cv-00207-JRG, 2024 WL 4980794, at *2 (E.D. Tex. Dec. 4,

---

[1] All emphasis in this brief is added unless otherwise noted.

2024).  Induced infringement similarly requires knowledge of the asserted patent.  *Id.*

## IV.    CLAIMS 10–11, 13–15, AND 17 OF THE '348 PATENT ARE DIRECTED TO NON-STATUTORY SUBJECT MATTER UNDER 35 U.S.C. § 101

"For all categories [of claims] except process claims" (*i.e.*, claims to a machine, manufacture, or composition of matter), "the eligible subject matter" under 35 U.S.C. § 101 "must exist in some physical or tangible form."  *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348–49 (Fed. Cir. 2014); *see also In re Nuijten*, 500 F.3d 1346, 1353, 1357 (Fed. Cir. 2007).  Thus, if the claim is not to a process and its subject matter has no physical form, it "falls outside the four statutory categories of § 101" and "is not patent eligible."  *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1017 (Fed. Cir. 2015).

Here, claims 10–11, 13–15, and 17 of the '348 patent are *not* to a process; they require no "series of acts or steps."  *Nuijten*, 500 F.3d at 1355 (quoting, *e.g.*, *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002)) (cleaned up).  Thus, the claims' subject matter "must exist in some physical or tangible form."  *Digitech*, 758 F.3d at 1348–49.  But the claims recite only a "communication network service usage indicator" that comprises "an input configured to receive" data and "a data collector configured to" record data.  *E.g.*, '348 patent, col. 10 ll. 10–22.  The claim contains no physical or tangible limitations.   Even the specification confirms the indicator is "preferably" software and "[p]referably" "located on a computer server of a network operator."  *Id.* at col. 3 l. 66–col. 4 l. 2.

Like other claims that the Federal Circuit and other courts have held ineligible, these claims improperly recite nothing more than a system untethered to any tangible medium.  For example, the Federal Circuit repeatedly has held that software claims without any hardware limitations do not fall within any statutory category and are thus ineligible.  *See*, *e.g.*, *Allvoice*, 612 F. App'x at 1018 (holding that the ineligible "claims merely claim software instructions without any hardware

limitations"); *Digitech*, 758 F.3d at 1349–50 (holding that the "device profile, as claimed, is a collection of intangible color and spatial information"); *see also*, *e.g.*, *Automation Middleware Sols., Inc. v. Invensys Sys., Inc.*, No. 2:15-cv-00898-RWS, 2017 WL 11573945, at \*5 (E.D. Tex. Mar. 31, 2017) (holding that the ineligible claims recited "systems" but did not "require[] any hardware or tangible medium in which the claimed software must be embodied"). The claimed "indicator" is equally flawed. The ***claim*** does not tie the "indicator" to hardware, and although the patent specification states the "indicator" "may be hardware"—with no detail of what type of hardware might work—it states "[p]referably" the "indicator is software." '348 patent, col. 3 ll. 66–67. This passing alternative does not save the claim. The Federal Circuit has made clear that "where there are multiple covered embodiments, and not all covered embodiments are patent-eligible," the entire claim is unpatentable. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1294–95 (Fed. Cir. 2017); *see also* MPEP § 2106 (explaining that a claim which covers "both statutory and non-statutory embodiments" is not eligible). Here, like in *Mentor Graphics*, the claims are ineligible because they cover at least some ineligible embodiments. These claims therefore are not patent eligible because they are directed to non-statutory subject matter.

## V.     ALL ASSERTED CLAIMS OF THE '348 PATENT ARE NOT PATENT ELIGIBLE UNDER THE TWO-STEP *ALICE* INQUIRY

Claims 10–11, 13–15, and 17 of the '348 patent, as with the rest of the asserted claims of the patent, are not patent eligible for an additional, separate reason: they are directed to nothing more than the abstract idea of monitoring and recording data relative to other data. The Supreme Court has held that there are "important implicit" exceptions to what is patent-eligible subject matter under Section 101: "[l]aws of nature, natural phenomena, and abstract ideas." *Alice*, 573 U.S. at 216. There is a two-step "threshold inquiry" to decide this legal question of whether claims are directed to such an exception. *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd sub nom.*

*Bilski v. Kappos*, 561 U.S. 593 (2010).  Step One asks whether the claims are directed to an ineligible "concept[]," like an "abstract idea[]."  *Alice*, 573 U.S. at 217.  If so, at Step Two, the claims must recite an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the [ineligible concept] itself."  *Id.* at 217–18 (cleaned up).

### A.    *Alice* Step One:  The Claims Are Directed to an Abstract Idea

Here, the '348 patent claims are directed to the abstract idea of monitoring and recording data relative to other data.  The Step One inquiry, which "must focus on the language of the [a]sserted [c]laims themselves, considered in light of the specification," "ask[s] what the patent asserts to be the focus of the claimed advance over the prior art," and whether that focus is on ineligible subject matter, such as an abstract idea.  *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021); *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

### 1.    The Claims Are Focused on the Abstract Idea of Monitoring and Recording Data Relative to Other Data

The claim language and the specification establish that the "character as a whole" of the '348 patent claims is the abstract idea of monitoring and recording data relative to other data.  *Torus Ventures*, 2025 WL 1799327, at *2.  For instance, independent claim 1 recites a "method of monitoring a user's usage of a network service" by performing three broad steps of "recording."  '348 patent, col. 9 ll. 19–29.  Although the claim states what data is recorded—two "length[s] of time" relative to a predefined threshold value and an "average loading of the network service"—it offers no details about how to record that data, much less what to do with it.  Instead, all the claim requires is recording three types of data relative to threshold values (*i.e.*, other data) and stops there.  Indeed, none of the asserted claims require taking any action with respect to the recorded data to, for instance, transform that recorded data into something more or different.

Consistent with the claim language, the specification concedes that "[t]he invention particularly relates to the monitoring of service usage" and "there are known monitoring systems that gather statistics with respect to" service "utilisation." '348 patent, col. 1 ll. 21–23, 54–55. The specification further concedes in its summary of the invention that "[t]he data values collected over the reco[r]ding period provide the operator with sufficient information so that it can determine whether a[n] SLA is being complied with." *Id.* at col. 2 ll. 12–14; *id.* at col. 4 ll. 54–58 (discussing use of "software . . . to obtain information regarding the usage of the service"). Thus, as the specification confirms, the purported invention focuses on monitoring network service usage by recording data.

## 2. Controlling Precedent Holds That Monitoring and Recording Data Is a Patent-Ineligible Abstract Idea

This focus of the asserted claims—*i.e.*, monitoring and recording data relative to other data—is similar claims that the Federal Circuit has held ineligible. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) (explaining the "decisional mechanism" for patent eligibility is a "common law methodology").

For example, in *In re Gale*, the Federal Circuit addressed claims that involved "monitoring" a "critical test result message management system" by comparing the system's "calculated usage pattern" with a "pre-defined usage pattern requirement." 856 F. App'x 887, 888–89 (Fed. Cir. 2021). The court held that these claims were directed to the "abstract idea of (1) collecting information (here, receiving messages and reading their metadata), (2) analyzing the information (here, calculating a usage pattern and determining its compliance with a predetermined usage pattern), and (3) reporting the results." *Id*. at 889. Although the patent stated its method ensured that reporting of diagnostic test data "occurs consistently and continually," the court nonetheless held the claims were directed to an ineligible abstract idea. *Id.* at 888–90.

The Federal Circuit and other courts repeatedly have held ineligible similar claims focused on monitoring and recording data. In *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, for instance, certain ineligible claims were directed to the abstract idea of "*monitoring* the delivery of real-time information to user(s) or *measuring* such delivery for commercial purposes," while others were directed to "(1) sending information, (2) directing the sent information, (3) *monitoring* the receipt of the sent information, and (4) *accumulating records* about receipt of the sent information." 874 F.3d 1329, 1337, 1340 (Fed. Cir. 2017). In *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, the ineligible claims focused on "*monitoring*, *recording*, sorting, communicating, and generating information regarding shipping containers in a shipping yard," which "are all abstract ideas themselves." 100 F. Supp. 3d 405, 414 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016). Likewise, in *Electric Power Grp., LLC v. Alstom S.A.*, the "focus of the asserted claims" was on "*collecting* information, analyzing it, and displaying certain results of the collection and analysis." 830 F.3d 1350, 1353 (Fed. Cir. 2016). The Federal Circuit held "these claims focus on an abstract idea," and explained that "[i]nformation as such is an intangible" so that "collecting" it is "within the realm of abstract ideas." *Id.* (citing cases).[2]

Here, the asserted '348 patent claims similarly involve no more than the abstract idea of monitoring and recording data. Indeed, the claims here require even *less* than the ineligible claims in *Gale*, *Two-Way Media*, *Wireless Media*, and *Electric Power*: the '348 patent claims, for example, require no particular steps of analysis or reporting concerning the recorded data—which, according to the case law discussed above, still would be insufficient for patent eligibility at Step

---

[2] *See also Geoscope Techs. Pte. Ltd. v. Google LLC*, 2025 WL 1276235, at *2 (Fed. Cir. May 2, 2025) (ineligible claims that "simply require[d] collecting, comparing, and reporting data"); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (ineligible claims directed "to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory").

One. Instead, the claims simply focus on recording data and do not even require taking any particular steps concerning the recorded data that could possibly be considered inventive, *e.g.*, transforming the data into something more or different.

### 3.    Nothing in the Claims Can Save Them at Step One

There are several additional indications that the claims are not patent eligible at Step One. For example, the Federal Circuit has distinguished claims focused "on the specific asserted improvement in computer capabilities" (which may pass Step One) from claims that are focused "instead[] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool" (which fail Step One). *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). The '348 patent claims fall into the latter category because they require no specific technological improvement to implement the abstract idea of monitoring and recording data relative to other data. The specification makes clear that the invention can be carried out by any generic computing technology. *See* '348 patent col. 4 ll. 44–46 ("The method of the invention is carried out by means (1) such as software located on a server (2) of an Ethernet service operator."). As one court in this District explained, "[r]ecording a transaction is a mundane operation that can be performed by any generic computer with conventional programming." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 838 (E.D. Tex. 2014).

In addition, the Federal Circuit has "'repeatedly' held [that], to avoid ineligibility," a claim must "disclose the 'how'"; that is, "'a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it.'" *Realtime Data LLC v. Array Networks Inc.*, 2023 WL 4924814, at *7–8 (Fed. Cir. Aug. 2, 2023). It also has observed that "the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101 . . . ." *Elec. Power*, 830 F.3d at 1356. Here, the '348 patent claims use only "purely functional terms"—*i.e.*, "monitoring" and "recording"—without

specifying *how* to accomplish the intended result or "sufficiently describ[ing] *how* to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Indeed, the claims are so broad that their basic functions of "monitoring" and "recording" data can be implemented no differently from how a human could perform them in their "mind or using a pencil and paper"—which is another "telltale sign of abstraction." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (cleaned up).

Thus, the claims are focused only on a result—the abstract idea of monitoring and recording data relative to other data—rather than a specific way of achieving that result, let alone one that requires a particular technological improvement. The claims fail Step One.

### B.    *Alice* Step Two: The Claims Lack an Inventive Concept

If at Step One the claims are directed to an abstract idea, then at Step Two the claims must supply an "inventive concept" by reciting elements that amount to "*significantly more* than a patent upon the [abstract idea] itself," such that they "transform th[e] abstract idea into a patent[-]eligible invention." *Alice*, 573 U.S. at 221. "[C]onventional, routine and well understood applications in the art" are insufficient. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. 2015). As with Step One, Step Two "must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).

### 1.    Claim 1 Lacks an Inventive Concept

Independent claim 1, whether its limitations are considered individually or as an ordered combination, lacks any inventive concept that could amount to "significantly more" than the abstract idea of monitoring and recording data relative to other data. The claim merely recites a "method of monitoring" with three steps of "recording" data, without requiring any specific way of implementing those steps. Nor does the claim require any inventive step about what to do with

the recorded data, *e.g.*, somehow transforming the data. The claim does not even specify what the recited threshold values are. At most, the specification states that these values, or other data, simply may be defined in SLAs. '348 patent col. 1 ll. 30–44; *id.* at col. 2 ll. 12–18; *id.* at col. 5 ll. 4–15. Thus, the claim involves nothing "more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Torus Ventures*, 2025 WL 1799327, at *8.

Furthermore, claim 1 requires no specific or unconventional improvements to the existing technology. The claim itself recites no specific components, let alone specifically improved components, to perform the only steps of the claim, *i.e.*, "recording." Instead, the specification confirms the method can be performed using indisputably generic, preexisting technology, "such as *software* located on a server . . . of an Ethernet service provider." '348 patent col. 4 ll. 44–46. Thus, claim 1 does not require "anything other than conventional computer and network components operating according to their ordinary functions" and thus is not patent eligible at Step Two. *Two-Way Media*, 874 F.3d at 1341; *see also Alice*, 573 U.S. at 223–24; *Elec. Power*, 830 F.3d at 1355.

### 2. The Remaining Claims Lack an Inventive Concept

The remaining asserted claims are focused on no more than the same abstract idea of monitoring and recording data relative to other data, and thus also lack an inventive concept. *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). The additional elements in these claims beyond those recited in independent claim 1 are addressed below.

#### a) Method Claims

**<u>Claims 2–3 and 6–9.</u>** Claims 2 and 3 add limitations regarding the recorded data, including

the "length of time" or the "number of individual times" the service was considered to be overloaded relative to predefined thresholds. '348 patent col. 9 ll. 29–35. Claims 6 and 7 recite that the monitoring and recording is done "over a predetermined recording period." *Id.* at col. 9 l. 45–col. 10 l. 3. Claims 8 and 9 add a "sampling period" from which data values are "extract[ed]" or "determin[ed]." *Id.* at col. 10 ll. 4–9. These claims merely require recording data about other activity (claim 2), recording at different time periods (claim 3), or determining recorded data values from a particular period (claims 8 and 9). In other words, these dependent claims are simply "trivial variations" of the same abstract idea; they "do not change the focus of the" claims and do not require any specific technological improvements to achieve. *Trinity Info. Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023). "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG*, 899 F.3d at 1291.

**Claim 5.** Claim 5 adds a limitation of "modifying the network based on the recorded data values to make it more efficient." '348 patent col. 9 ll. 43–45. But claim 5 offers no detail about what this requires, how to "make" the network "more efficient," or even in what specific way the network is intended to be "more efficient." Thus, claim 5 amounts to no more than the broad, abstract concept of "mak[ing]" a network "more efficient" based on data. But simply "[a]dding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract," and thus is insufficient to save claim 5 at Step Two. *ChargePoint*, 920 F.3d at 771.

### b)    System Claims

**Claim 10.** Independent claim 10 is materially the same as claim 1, except that claim 10 recites an "indicator" that comprises an "input configured to receive" threshold values and a "data collector configured to record" the data recited in claim 1. '348 patent col. 10 ll. 10–22. As discussed, the "indicator," "input," and "data collector" are at best generic technology that require no specific or unconventional improvements. *Supra* Section IV. According to the specification,

the "indicator" is at best preferably generic "software," or alternatively generic "hardware." '348 patent col. 3 ll. 66–67.  Likewise, neither the claim nor the specification offers any specificity as to what the "input" or "data collector" are.  While the claim says what the "input" and "data collector" are configured to do, it does not "provid[e] *how* the system is configured," or otherwise indicate the claims include a "non-abstract, technological solution."  *United Servs. Auto. Ass'n v. PNC Bank, N.A.*, 139 F.4th 1332, 1338 (Fed. Cir. 2025).  Thus, the claim at most amounts to "mere automation of manual processes using generic computers," which "does not constitute a patentable improvement in computer technology."  *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

**Claims 11–13**.  Claim 11 recites that the service usage indicator of claim 10 is "implemented in a software module," and claim 12 recites that the indicator is "implemented as one or more hardware components." '348 patent col. 10 ll. 23–27.  Claim 13 states the indicator is "located on a computer server associated with a network operator."  *Id*. at col. 10 ll. 28–30.  These dependent claims identify only generic components ("software module," "hardware components," and "a computer server associated with a network operator") performing basic functions.  Because the claims require no particular unconventional changes or improvements to these generic components, they lack any inventive concept that could amount to significantly more than the abstract idea.  *See Elec. Power*, 830 F.3d at 1355 (holding that mere "invocations of computers and networks that are not even arguably inventive are 'insufficient to pass'" Step Two).

**Claims 14–15, 17.**  Claims 14 and 15, which depend from claim 10 and otherwise are the same as claims 2 and 3, and claim 17, which also depends from claim 10 and otherwise is the same as claim 5, fail at Step Two for the reasons discussed above.

## C.    Dismissal Is Appropriate

There is no basis to avoid deciding this patent-eligibility question now.  For instance,

NovaCloud agrees there are no claim construction issues that need to be resolved for purposes of patent eligibility.[3] *Torus Ventures*, 2025 WL 1799327, at *2 (granting dismissal on the basis of ineligibility where the plaintiff did not disagree that no relevant claim construction disputes existed).   In addition, the Complaint contains only conclusory assertions regarding patent eligibility.   It merely states without explanation that the claims "are drawn to solving specific, technical problems" and that the advancements "were not routine, well-understood or conventional." Dkt. 1 ¶ 33.  This is insufficient to avoid dismissal.  *See*, *e.g.*, *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).   Further, as outlined above, NovaCloud's allegations find no support in the claims or the specification.  "Any allegation about inventiveness, wholly divorced from the claims or the specification does not defeat a motion to dismiss." *Torus Ventures*, 2025 WL 1799327, at *2 (cleaned up).  Dismissal should be granted.

## VI.    NOVACLOUD'S PRE-SUIT WILLFUL AND INDUCED INFRINGEMENT CLAIMS SHOULD BE DISMISSED

Both willful and induced infringement require knowledge of the patent-in-suit and infringement of it.  *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378–79 (Fed. Cir. 2020) (willful); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (induced).   Thus, "[t]o sufficiently plead pre-suit willful" or induced infringement, "a plaintiff must plausibly allege that the defendant knew of an asserted patent before the plaintiff filed the lawsuit." *See Signode Indus. Grp. LLC v. Samuel, Son & Co.*, No. 2:24-CV-00080-JRG, 2024 WL 3543408, at *2 (E.D. Tex. July 25, 2024) (willful); *Dialect*, 2024 WL 4980794, at *2 (induced).

Here, NovaCloud alleges only that IBM became aware of each patent "at least as of the filing of this Complaint."  Dkt. 1 ¶¶ 70, 77, 84, 91, 98, 105; *see also id.* ¶¶ 69, 76, 83, 90, 97, 104.

---

[3] IBM reserves the right to provide specific claim constructions at a later time depending on NovaCloud's prosecution of this case.

Such boilerplate allegations are insufficient to establish pre-suit knowledge of the asserted patents and infringement of them, and this Court has consistently rejected them. *See, e.g., CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*, No. 2:23-cv-311-JRG, 2024 WL 1219725, at *6–7 (E.D. Tex. Mar. 20, 2024) (dismissing pre-suit willfulness claims); *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:23-cv-172-JRG, 2022 WL 610796, at *7 (E.D. Tex. Jan. 24, 2022) (same); *Dialect*, 2024 WL 4980794, at *2 (dismissing pre-suit induced infringement claims).

In fact, the only pleaded basis for pre-suit knowledge of the asserted patents is a February 2025 licensing discussion, in which NovaCloud allegedly "approached IBM to discuss a license for NovaCloud's patent portfolio." Dkt. 1 ¶ 15. But generalized references to a patent portfolio cannot establish knowledge of the specific asserted patents here, much less knowledge of infringement of those patents. This Court has repeatedly held that knowledge of alleged patent infringement must be tied to the patents-in-suit specifically. *See, e.g., Touchstream Techs., Inc. v. Altice USA, Inc.*, No. 2:23-cv-00060-JRG, 2024 WL 1117930, at *2 (E.D. Tex. Mar. 14, 2024) (dismissing pre-suit willfulness claims despite prior discussions of patents belonging to the same family); *Dialect*, 2024 WL 4980794, at *2–3 (dismissing pre-suit indirect infringement claims because prior discussions referenced only a "patent portfolio generally"); *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (cleaned up) ("Multiple district courts, post-*Halo*, have held that general knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent."). Thus, NovaCloud's claims of pre-suit willful and indirect infringement should be dismissed.

## VII.    CONCLUSION

Based on the foregoing, IBM respectfully requests that the '348 patent be dismissed from this case, and that NovaCloud's allegations of pre-suit willful and induced infringement as to all six patents-in-suit be dismissed.

Dated:  September 29, 2025

Respectfully submitted,

_/s/ Brian Rosenthal_

Brian A. Rosenthal
Laura Corbin
Charles M. Sim
Claire Santiago
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
Email:  brosenthal@gibsondunn.com
Email: lcorbin@gibsondunn.com
Email:  csim@gibsondunn.com
Email:  csantiago@gibsondunn.com

Mark Reiter
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX  75201-2923
Telephone: 214.698.3360
Facsimile:  214.571.2900
Email:  mreiter@gibsondunn.com

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
Suite 2600
San Francisco, CA  94111-3715
Telephone: 415.393.8200
Facsimile:  415.393.8306
Email:  jschung@gibsondunn.com

Hannah L. Bedard
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
Telephone: 202.955.8500
Facsimile:  202.831.6106
Email:  hbedard@gibsondunn.com

Melissa Smith
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, Texas  75670

Telephone: 903.934.8450
Facsimile:  903.934.9257
Email:  melissa@gillamsmithlaw.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE WITH THE COURT'S</u>
## <u>35 U.S.C. § 101 MOTION PRACTICE ORDER</u>

___X___ The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.


_____ The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

_/s/ Brian Rosenthal_____
Brian A. Rosenthal

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 29, 2025, I caused the preceding document to be

served on all counsel through the Court's ECF system.

*/s/ Brian A. Rosenthal*
Brian A. Rosenthal
