**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **NOVACLOUD LICENSING, LLC,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**INTERNATIONAL BUSINESS MACHINES CORP.,**<br><br>**Defendant.** | **Civil Action No. 2:25-cv-00700**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF NOVACLOUD LICENSING, LLC'S OPPOSITION TO DEFENDANT INTERNATIONAL BUSINESS MACHINES CORP.'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS


I. INTRODUCTION .....1

II. BACKGROUND .....3

III. LEGAL STANDARD.....3

IV. THE PLAIN LANGUAGE OF CLAIMS 10-11, 13-15, AND 17 EMBODY A TANGIBLE PHYSICAL FORM. .....4

V. THE ASSERTED '348 PATENT CLAIMS ARE DIRECTED TO ELIGIBLE SUBJECT MATTER .....7

A. The Claims Are Directed to a Solution to a Technical Problem and Improve the Technological Process.....7

1. Then Existing Prior Art Systems Presented Technical Problems.....8

2. The '348 Patent Claims and Discloses a Specific Solution to Then Existing Technical Problems. .....9

3. The Federal Circuit Has Held Similar Claims Patent Eligible. .....10

4. IBM's Cited Case Law is Inapposite to the '348 Patent.....11

B. Even If the Court Concludes the Claims Are Directed to an Abstract Idea—They Are Not—The Disclosed Solution Is an Unconventional and Not Well Understood Combination of Elements That Satisfies Step Two. .....13

1. The '348 Patent Claims More Than Just the Performance Of Well-Understood, Routine, And Conventional Activities. .....13

2. Each of the '348 Patent's Claims Disclose a Solution to a Technological Problem and Provide an Inventive Concept Under Step Two.....15

VI. PRE-SUIT INDIRECT AND WILLFUL INFRINGEMENT. .....17

VII. CONCLUSION.....17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)....................5, 13, 14, 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................7, 13

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
612 F. App'x 1009 (Fed. Cir. 2015)....................6

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016).................... passim

*Automation Middleware Sols., Inc. v. Invensys Sys., Inc.*
No. 2:15-CV-00898-RWS, 2017 WL 11573945 (E.D. Tex. Mar. 31, 2017), aff'd, 737 F. App'x 1005 (Fed. Cir. 2018)....................6

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012)....................3

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................4

*Diamond v. Diehr*,
450 U.S. 175, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981)....................7

*Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)....................5, 6

*Elec. Power Grp., LLC v. Alstom S.A.*
830 F.3d 1350 (Fed. Cir. 2016)....................12

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................7, 8, 9, 10

*In re Gale*,
856 F. App’x 887 (Fed. Cir. 2021)....................11, 12

*In re TLI Commc’ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....................6, 13, 15

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)....................15

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)....................1

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016)....................15

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....................3

*SRI Int'l, Inc. v. Cisco Sys.*
930 F.3d 1295 (Fed. Cir. 2019)....................11, 12

*Two-Way Media Ltd. v. Comcast Cable Communications*
874 F.3d 1329 (Fed. Cir. 2017)....................12

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*
100 F. Supp. 3d 405 (D.N.J. 2015), aff'd, 636 F. App'x 1014 (Fed. Cir. 2016) ....................12

**STATUTES**

35 U.S.C. § 101 .................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a) ....................17

Rule 12(b)(6)....................3, 14

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '348 Patent | U.S. Patent No. 8,407,348; Dkt. 34, Exhibit 2 |
| Asserted Claims | All claims identified in NovaCloud's infringement contentions |
| IBM | International Business Machines Corporation |
| Motion or Mot. | Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6); Dkt. 48 |
| Compl. | NovaCloud's First Amended Complaint; Dkt. 34 |

# I. INTRODUCTION

IBM's characterization of the '348 Patent asks this Court to ignore the Federal Circuit's repeated "[caution] that courts 'must be careful to avoid oversimplifying the claims by looking at them generally' and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). The '348 Patent teaches novel techniques for monitoring network service usage that solve then existing problems arising in the realm of computer networking. Despite this, IBM would have the Court believe that the '348 Patent is directed to nothing more than the concept of "monitoring and recording data relative to other data." Mot. at 1.

When a user contracts with a network operator, they "typically negotiate a Service Level Agreement (SLA) which defines various parameters and limits of the connection." Dkt. 34, Ex. 2 (the '348 Patent) at 1:31-33. When administering network services to those users, "it is highly desirable that the network operator is able to obtain an accurate and representative historical record of the user's service usage." '348 Patent at 1:47-49; Dkt. 34 at ¶38. Such a record "would allow the network operator to determine when a user has breached their SLA and would also allow the operator to manage their network effectively." '348 Patent at 1:50-52. Prior to the '348 Patent's invention, network operators were forced to "choose between collecting only low-resolution average utilization data, which was insufficient for verifying Service Level Agreement (SLA) compliance or collecting detailed, high resolution usage data, which consumed exorbitant memory and network resources." Dkt. 34 at ¶40. The '348 Patent solved this technological and computer-based issue by disclosing a method and tangible service usage indicator that "allows a useful and effective representation of usage of a network or service to be derived while using a minimal

amount of memory." '348 Patent at 3:12-14; Compl. at ¶41. The '348 Patent is directed to this specific improvement to network monitoring systems, not an abstract idea as IBM claims.

Even if the '348 Patent were directed to an abstract idea—which it is not—NovaCloud's First Amended Complaint alleges, and the '348 Patent's specification substantiates, that the disclosed "improved network usage monitoring system was not previously well-understood, routine, or conventional." Compl. at ¶46. The '348 Patent's claimed use of specialized counters and combination of activity and saturation thresholds, average active window loading, and period of overload event windows "improved then existing networking usage monitoring systems." *Id.* at ¶¶41-46. As stated in NovaCloud's well-pleaded First Amended Complaint, this "ordered combination of claim elements is inventive," and "amounts to significantly more than a patent claiming an abstract concept." Compl. at ¶47. At minimum, NovaCloud's plausible and specific allegations must be taken as true and create a genuine question of fact that precludes dismissal at this early stage.

Further, IBM's assertions that claims 10-11, 13-15, and 17 of the '348 Patent are system claims devoid of a physical or tangible form ignores the claims' plain language. Independent claim 10 recites a tangible machine—a communication network service usage indicator—with an input configured to receive defined parameter values and a data collector configured to record the corresponding metrics. Further, the dependent claims specify software and hardware implementations and place the indicator "on a computer server associated with a network operator." '348 Patent at 10:23-24, 28-30. Therefore, these claims are directed to tangible and physical embodiments, contrary to IBM's assertions. Further, despite stating that claim construction is not necessary to resolve the present dispute, IBM's arguments rely on its own

implicit constructions of the claim terms of claims 10-11, 13-15, and 17. These claims, by their plain language, are directed to a statutory machine.

NovaCloud respectfully asks this Court to deny IBM's motion with respect to the '348 Patent in its entirety.

## II. BACKGROUND

NovaCloud and IBM engaged in pre-suit discussions regarding NovaCloud's patent portfolio in early 2025, prior to NovaCloud filing this suit. Compl. at ¶16. NovaCloud contacted IBM to initiate good-faith licensing discussions concerning NovaCloud's portfolio. *Id.* The parties later met via teleconference. *Id.* at ¶17. NovaCloud followed up with a draft non-disclosure agreement for IBM's review, but approximately three weeks later, IBM told NovaCloud that it was not willing to enter into an NDA. *Id.* at ¶¶18-19. NovaCloud then filed the present lawsuit to enforce its patent rights. *Id.* at 20.

IBM filed the present Motion to Dismiss under Rule 12(b)(6), seeking dismissal of NovaCloud's claims regarding the '348 Patent and NovaCloud's pre-suit willful and induced infringement allegations. Dkt. 48. Notably, IBM does not ask the Court to dismiss the remainder of NovaCloud's allegations. This motion should be denied with respect to the '348 Patent for the reasons set forth below.

## III. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012).

Under 35 U.S.C. § 101, one may obtain a patent for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." However, "a claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, i.e., a law of

nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)). Dismissal under 35 U.S.C. § 101 at this early stage "is appropriate **only** when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)) (emphasis added).

## IV. THE PLAIN LANGUAGE OF CLAIMS 10-11, 13-15, AND 17 EMBODY A TANGIBLE PHYSICAL FORM.

At the outset, IBM incorrectly asserts that claims 10-11, 13-15, and 17 are patent ineligible, not on *Alice* grounds, but because they do not claim tangible subject matter. Mot. at 3-5. Contrary to these assertions, the '348 Patent's claims and specification demonstrate that claims 10-11, 13-15, and 17 claim a tangible and physical machine. Each of these claims recite a "communication network service usage indicator" that comprises "an input configured to receive an activity threshold value, a saturation threshold value, and a recording period value." '348 Patent at 10:10-13. They further recite a "data collector configured to record" an active period, average active load, and a saturation period. *Id.* at 10:15-23. The specification provides for two embodiments of the "communication network service usage indicator." *Id.* at 10:10-13. Nonetheless, IBM performs its own claim construction on this term in an effort to read the claims to lack a tangible embodiment. Mot. at 14 (IBM stating that no claim construction is necessary to resolve its motion). The embodiment of the indicator embodies physical and tangible forms; as such, IBM's arguments should be rejected.

First, "the service usage indicator … may be **hardware**." *Id.* at 3:66-67.[1] It is indisputable that this embodiment is a tangible machine under 35 U.S.C. § 101 and Federal Circuit case law. *E.g., Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014). The second embodiment contemplated by the specification is "software" that is "preferably … **located on a computer server** of a network operator." '348 Patent at 3:66-4:2. Confusingly, IBM identifies this language in its briefing to support its assertion that the claims "contain no physical or tangible limitations." Mot. at 4. This is a non-starter as "hardware" and "a computer server" cannot be said in good faith to be intangible or non-physical embodiments. Adding further confusion, IBM includes dependent claim 13 in its arguments centering on lack of a tangible embodiment—all of which are meritless. Claim 13 explicitly requires the "indicator [to be] located on a computer server associated with a network operator." '348 Patent at 10:28-30.

IBM further argues that the specification's use of the word "preferably" to describe the embodiment in which the indicator is software located on a computer server implies there are software embodiments that are not located on a computer server. Mot. at 4-5. This argument, as the Federal Circuit has recognized, flies in the face of common sense. In a precedential decision, the Federal Circuit addressed IBM's very argument. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125-26 (Fed. Cir. 2018). There, the claims before the court pertained to a system for "designing, creating, and importing data into a viewable form." *Id.* at 1123. In holding that the software claims were directed to a tangible embodiment, the Federal Circuit stated, "[the software system claim] claims a data processing system which clearly requires a computer operating software, a means for viewing and changing data, and a means for viewing forms and reports." *Id.* at 1125. Similarly, the software embodiments of the '348 Patent necessarily

---

[1] All emphasis in this brief is added unless otherwise noted.

require a server on which to be implemented, and a means for displaying the recorded statistics and counts. "This is very much a tangible system." *Id.*

Lastly, IBM's cited case law is readily distinguishable. Mot. at 4. IBM cites to the Federal Circuit's non-precedential opinion in *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009 (Fed. Cir. 2015). Mot. at 4. There, the claims at issue focused on a "speech recognition interface." *Id.* at 1018. Unlike the '348 Patent, the patent at issue in *Allvoice* neither disclosed that the speech recognition interface was hardware, nor claimed specific structural components, such as a communication network service usage indicator or data collector. *Id.* at 1017-18; *see generally* Ex. 1 (patent at issue in *Allvoice*). IBM also finds no support in *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1349 (Fed. Cir. 2014). There, the "device profile" claimed was "not describe[d] as a tag or any other embodiment of hardware or software." *Id.* at 1349. As discussed above, the same cannot be said about the '348 Patent's network service usage indicator. Finally, IBM's citation to this District's decision in *Automation Middleware Sols., Inc. v. Invensys Sys., Inc.* is similarly inapposite. No. 2:15-CV-00898-RWS, 2017 WL 11573945 (E.D. Tex. Mar. 31, 2017), aff'd, 737 F. App'x 1005 (Fed. Cir. 2018). There, the court held one patent's claims to lack a tangible embodiment because the claims at issue "only recite computer related functions." *Id.* at *5. As discussed above, the present claims go beyond merely reciting computer related functions.

Because claims 10-11, 13-15, and 17 exist in the physical tangible form of either hardware or software implemented on hardware, the Court should hold these claims to be directed to statutory subject matter under 35 U.S.C. § 101 and deny IBM's motion with respect to these claims.

## V. THE ASSERTED '348 PATENT CLAIMS ARE DIRECTED TO ELIGIBLE SUBJECT MATTER

IBM's characterization of the asserted claims as "nothing more than the abstract idea of monitoring and recording data relative to other data" (Mot. at 5) is precisely the level of generalization that the Supreme Court warned would "swallow all of patent law." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347, 2354, 189 L. Ed. 2d 296 (2014); *see also In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (quoting *Alice* and stating "in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"); *cf. Diamond v. Diehr*, 450 U.S. 175, 189 n. 12, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions un-patentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious."). Contrary to IBM's improper generalization, the '348 Patent's claims and specification are "drawn to solving specific, technical problems arising in the area of network service usage." Compl. at ¶47. The claimed solution "provides for advancements in the field that were not routine, well-understood or conventional." *Id.* Therefore, IBM's *Alice* arguments should be rejected, and its motion denied.

### A. The Claims Are Directed to a Solution to a Technical Problem and Improve the Technological Process

Step One of the *Alice* Two-Step asks "whether the claims at issue are directed to one of those patent-ineligible concepts" such as an "abstract idea." *Alice*, 573 U.S. at 217. In analyzing this first step, courts apply "the classic common law methodology." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). Further, this inquiry examines the "claims, considered in light of the specification," to determine if "their character as a whole is directed to

the excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). In the context of patents directed to computer-related technology, as is the case here, the first step in the *Alice* inquiry "asks whether the focus of the claims is on the specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 1335-36. The '348 Patent falls squarely within the former category, and as such, is not directed to an abstract idea under step one.

**1. Then Existing Prior Art Systems Presented Technical Problems.**

In the field of monitoring network service usage, to which the '348 Patent pertains, "it is highly desirable that the network operator is able to obtain [an] accurate and representative historical record of the user's service usage." Compl. at ¶38; '348 Patent at 1:47-49. At the time of the '348 Patent's disclosure, known network service usage monitoring systems had significant technological shortfalls. Compl. at ¶38. One such shortfall was that prior art systems "only provide[d] a value representing the average utilization over a defined period of time." *Id.*; '348 Patent at 1:56-57. Such systems were incapable of providing sufficiently detailed information to allow the network operator to determine whether a user was adhering to its service level agreement with the network operator. Compl. at ¶38; '348 Patent at 1:57-61. An alternative prior art system, which allowed network operators to obtain sufficiently detailed information to ensure agreement compliance, presented yet another technological problem in need of solving. This system operated by "continuously record[ing] user's network usage sampled every few seconds." Compl. at ¶39. While this system allowed for highly detailed data, it "exert[ed] an exorbitant cost on the operator in terms of memory requirements." Compl. at ¶39; '348 Patent at 1:64-67. As a result, "technical problems with prior network monitoring systems required network operators to choose between collecting only low-resolution average utilization data, which was insufficient for verifying

Service Level Agreement (SLA) compliance or collecting detailed, high resolution usage data, which consumed exorbitant memory and network resources." Compl. at ¶40.

### 2. The '348 Patent Claims and Discloses a Specific Solution to Then Existing Technical Problems.

The '348 Patent's "claims considered in light of [its] specification" are directed to a specific and tangible solution to this uniquely technological problem. *Enfish*, 822 F.3d at 1335. This "specific asserted improvement in computer capabilities" (*id*. at 1335-36) "allows a useful and effective representation of usage of a network or service to be derived while using a minimal amount of memory." Compl. at ¶41; '348 Patent at 3:12-14. The '348 Patent further teaches how to perform its disclosed solution to this technical problem and "requires implementing certain counters to improve then existing networking usage monitoring systems." Compl. at ¶46.

For example, aspects of the claimed solution "require determining an activity count" whereby the activity count represents the "length of time that the service was considered active." Compl. at ¶42; '348 Patent at 5:4-5. Further, the solution determines a "utilization statistic" that represents the "average loading during the time that a service was considered active" (Compl. at ¶43; '348 Patent at 5:25-26) and a saturation threshold, "representing the raw utilization at which the service is saturated." Compl. at ¶44; '348 Patent at 5:33-34. The disclosed solution also determines the period of overload, which represents the period of time "the raw utilization has exceeded the saturation threshold and remains equal to or above it." Compl. at ¶45; '348 Patent at 5:42-43.

These counters enable the disclosed solution to address the shortcomings of the prior art network usage monitoring systems. Further, the '348 Patent's claimed solution enables the "monitoring computer itself to generate a representative historical record of a user's service usage with minimal memory and network resource expenditure," thereby solving the uniquely

technological problems discussed above. Compl. at ¶48. The result of the "claimed invention is thus a specific improvement in computer network monitoring technology that results in a more efficient and technically improved network monitoring system. As such, the claims are not directed to an abstract idea.

**3. The Federal Circuit Has Held Similar Claims Patent Eligible.**

The '348 Patent's claimed subject matter is analogous to several deemed to be eligible for patenting by the Federal Circuit. In *Enfish*, the Federal Circuit rejected *Alice* challenges at step one when reviewing claims directed to a "self-referential table for a computer database." 822 F.3d at 1329-39. There, the court found that the "plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. In supporting this finding, the Federal Circuit highlighted portions of the patent's specification that discussed benefits of the claimed invention over prior art systems. *Id.* at 1337-38 ("According to the specification, traditional databases … are inferior to the claimed invention.") (stating that the court's "conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention" achieves benefits over prior art systems including "**smaller memory requirements**"). Just as the Federal Circuit found in *Enfish*, the '348 Patent's claims are not directed to an "economic or other task for which a computer is used in its ordinary capacity." *Id.* at 1336. Rather, the claims here are directed to specific improvements in network usage monitoring systems that achieve "smaller memory requirements" over prior art systems. *Id.* at 1337.

Similarly, the Federal Circuit in *Amdocs* held claims designed to "solve an accounting and billing problem faced by network service providers" to be directed to an improvement in computer functionality, rather than an abstract idea. 841 F.3d at 1291. There, the court found "enhancing data in a distributed fashion" to be an "unconventional technological solution" to the

"technological problem" of "massive record flows which previously required massive databases." *Id.* at 1300. Analogously, the '348 Patent teaches an improved system for collecting unique datapoints through its specialized counters to solve the prior art's technological problem of requiring exorbitant amounts of memory. The presently claimed system is "designed for efficiency to minimize impact on network and system resources." *Id.* at 1303.

In *SRI Int'l, Inc. v. Cisco Sys.*, the Federal Circuit held claims related to the monitoring and surveillance of computer networks to be patent eligible and not directed to an abstract idea. 930 F.3d 1295 (Fed. Cir. 2019). There, the court found "that the claims are more complex than merely reciting the performance of a known business practice" and are better understood to be "rooted in computer technology in order to solve a technological problem arising in computer networks." *Id.* at 1303. The same is true here. As discussed above, the '348 Patent is directed to solving the technological problems arising in computer network usage. The disclosed invention "monitors and surveil[s] computer networks" to allow network operators to ensure compliance with agreements. *Id.* The *SRI* court further refutes IBM's argument that the '348 Patent's claimed invention could be performed by a human in their mind or on pen and paper. Mot. at 9. The Federal Circuit rejected this baseless argument and stated, "that the human mind is not equipped to detect[] activity by using network monitors and analyzing network packets." *SRI Int'l*, 930 F.3d at 1304. As is the case here, the human mind is not equipped to implement the counters described above to monitor a user's network usage in real time and track periods of saturation.

#### 4. IBM's Cited Case Law is Inapposite to the '348 Patent.

IBM cites four cases to support its assertions that the '348 Patent is directed to an abstract idea, but each of these cases is readily distinguishable. IBM first, and most substantively, cites to *In re Gale*, 856 F. App'x 887 (Fed. Cir. 2021). Mot. at 7. In attempting to analogize the present facts to those of *In re Gale*, IBM misses the mark. There, the Federal Circuit held that claims

"directed to a method for monitoring the reporting of diagnostic test results" in the medical field were directed to an abstract idea. *In re Gale*, 856 F. App'x at 889-90. The patent was focused on ensuring consistent reporting of diagnostic testing information in the medical field. *Id*. at 888. The fatal flaw in the claims there was that they were aimed at solving a problem in the medical field, "not to any technological improvement" (*id.* at 890), in contrast to the technological improvements (e.g., enabling a smaller memory footprint) provided by the '348 Patent.

Similarly, IBM cites two 2016 Federal Circuit decisions in which the court held claims to be ineligible under *Alice* at step one. Mot. at 7. In *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, the Federal Circuit held claims for monitoring the location, movement, and load status of shipping containers within a container receiving yard to be directed to an abstract idea. 100 F. Supp. 3d 405, 413 (D.N.J. 2015), aff'd, 636 F. App'x 1014 (Fed. Cir. 2016). Yet again, the claims at issue were directed to solving a non-computer problem by using a computer merely as a tool. The same cannot be said of the '348 Patent's solution to a technological problem. Likewise, IBM's citation to *Elec. Power Grp., LLC v. Alstom S.A.* is misplaced. 830 F.3d 1350, 1354 (Fed. Cir. 2016). The Federal Circuit invalidated the *Electric Power* claims because they solved a problem unique to the power grid using computers merely as tools rather than claiming an improvement to computer technology. *Id.* at 1351; *see also SRI Int'l, Inc.*, 930 F.3d at 1304 ("The *Electric Power* claims were drawn to using computers as tools to solve a power grid problem, rather than improving the functionality of computers and computer networks themselves.").

Lastly, IBM finds no support in its citation to *Two-Way Media Ltd. v. Comcast Cable Communications*, as it again is readily distinguishable from the present facts. 874 F.3d 1329 (Fed. Cir. 2017). The Federal Circuit based its holding on its finding that the claims did not "lead[] to an improvement in the *functioning* of the system." *Id.* at 1338 (emphasis in original). Yet again,

the ’348 Patent is specifically directed to solving problems in the functioning of prior art network usage monitoring systems by disclosing a system that (1) provides sufficiently detailed information to network operators, while (2) using minimal memory space. Compl. at ¶¶38-48.

### B. Even If the Court Concludes the Claims Are Directed to an Abstract Idea—They Are Not—The Disclosed Solution Is an Unconventional and Not Well Understood Combination of Elements That Satisfies Step Two.

Because the ’348 Patent is not directed to an abstract idea, the Court’s analysis should stop after step one of the *Alice* Two-Step and hold the patent to be directed to eligible subject matter. However, should the Court conclude that the patent is directed to an abstract idea and reach step two, the ’348 Patent claims an inventive concept sufficient to transform the alleged abstract idea into a patent eligible application. *Alice*, U.S. 573 U.S. at 221. The Federal Circuit has “explained that the second step of the *Alice/Mayo* test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry.” *Aatrix*, 882 F.3d at 1128 (internal quotations omitted) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)). “Whether the claim elements or the claimed combination are well-understood, routine, or conventional is a question of fact,” and “cannot be answered adversely to the patentee” on a motion to dismiss. *Aatrix*, 882 F.3d at 1128. Lastly, the Court is to examine the claims in light of the specification under step two, as well as step one. *In re TLI Commc’ns*, 823 F.3d at 611-615; *see also Amdocs*, 841 F.3d at 1299.

#### 1. The ’348 Patent Claims More Than Just the Performance Of Well-Understood, Routine, And Conventional Activities.

Even if the Court were to find the ’348 Patent to be directed to an abstract idea—it is not—the claims are directed to unconventional and non-routine methods of network usage monitoring. As evinced in NovaCloud’s First Amended Complaint, the disclosed “network usage monitoring

system was not previously well-understood, routine, or conventional." Compl. at ¶46. Contrary to IBM's assertions otherwise, this allegation is not conclusory or divorced from the specification. Rather, this allegation finds support in both the preceding paragraphs of NovaCloud's First Amended Complaint, as well as the specification of the '348 Patent. Compl. at ¶¶38-48 (describing the problems presented by then existing network monitoring systems, evincing that the claimed solution was not well-understood, routine, or conventional and describing how the claimed system utilizes activity thresholds, average loading, saturation threshold, period of overload, and start of overload counts to solve the prior art's problems); '348 Patent at 1:28-67, 5:4-53; 9:6-15 (same). These allegations, which must be taken as true at this early stage of the litigation, establish that "the second step of the *Alice/Mayo* test is satisfied [because] the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128.

On similar facts, the Federal Circuit reversed a district court's 12(b)(6) dismissal on § 101 grounds. *Aatrix*, 882 F.3d at 1123-29. There, the claims involved "systems and methods for designing, creating, and importing data into a viewable form." *Aatrix*, 882 F.3d at 1123. The Federal Circuit noted that it has "held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Id.* at 1126-27. In *Aatrix*, as is the same here, the plaintiff's "amended complaint supplies numerous allegations related to the inventive concepts present in the claimed" invention. *Id.* at 1127; Compl. at ¶¶38-48. The plaintiff in *Aatrix* alleged many improvements and problems solved by its claimed invention, including saving storage space in the computer system. *Aatrix*, 882 F.3d at 1127. The same can be said here, as the '348 Patent claims a solution to network monitoring technology that allows for significantly less memory usage. Compl. at ¶41. Because NovaCloud has "adequately

allege[d] [its] claims contain inventive concepts [it should] survive a § 101 eligibility analysis under Rule 12(b)(6)." *Id.* at 1126-27.

### 2. Each of the '348 Patent's Claims Disclose a Solution to a Technological Problem and Provide an Inventive Concept Under Step Two.

As the Federal Circuit noted in *Amdocs*, a sufficiently inventive concept under step two is found "particularly when the claims solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner." 841 F.3d at 1300; *see also Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (finding claims to fail step two after looking for an improvement to the functioning of the computer itself); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (same). As discussed above, the claims of the '348 Patent solve a technology-based problem in the field of network usage monitoring. Thus, an inventive concept sufficient to pass step two should be found. Amdocs, 841 F.3d at 1300.

The patent's claims and specification, NovaCloud's First Amended Complaint, and this briefing thoroughly discuss the shortcomings of prior art network usage monitoring systems and how the disclosed system solves said shortcomings. As such, NovaCloud will not belabor the point further. IBM's remaining claim specific arguments are addressed below.

<u>Claim 1</u>: IBM argues that the claims fail to describe how the counters (*e.g.,* activity threshold, average loading, and saturation threshold) are to be implemented. Mot. at 11. However, the claims, read in light of the specification, show otherwise. *In re TLI Commc'ns*, 823 F.3d at 611-615. For example, the specification explains that "different counts are incremented depending whether the service is overloaded or not overloaded." '348 Patent at 6:63-64. The specification proceeds to describe how the counters are to be implemented. *Id.* at 7:1-8:24 (providing exemplary step-by-step and algorithmic implementation of incrementing the counters in various states).

Claims 2-3 and 6-9: IBM argues that these dependent claims are no more than variations of the same abstract idea as the patent at large. Mot. at 12. For the multitude of reasons discussed above, the '348 Patent is not directed to an abstract idea. As such, IBM's repackaged argument with respect to these dependent claims fails for the same reasons.

Claim 5: IBM argues that claim 5, which claims "modifying the network based on the recorded data values to make it more efficient," ('348 Patent at 9:42-44) fails because it does not detail how to make said network more efficient. Mot. at 12. However, as detailed in the specification, this "modif[ication] may include increasing or decreasing bandwidth over portions of the network depending on usage, installing routers, switches, or additional connections to improve the flow of data and load over the entire network." '348 Patent at 3:35-42.

Claim 10: Because "independent claim 10 is materially the same as claim 1," IBM's arguments fail for the same multitude of reasons discussed above. Mot. at 12.

Claims 11-13: IBM argues that these dependent claims fail because they "require no particular unconventional changes or improvements to [] generic components." Mot. at 13. However, as discussed at length above, NovaCloud has adequately and specifically alleged that the disclosed "network usage monitoring system was not previously well-understood, routine, or conventional." Compl. at ¶46.

Claims 14-15 and 17: As IBM simply references its arguments for claims 2, 3, and 5 respectively in arguing that these three dependent claims fail at step two, these arguments fail for the same reasons discussed with respect to claims 2, 3, and 5 discussed above.

Even if the Court reaches step two—and it should not—the '348 Patent discloses methods and systems to solve technological problems in network usage monitoring systems that were not well-understood, routine, or conventional. Therefore, the '348 Patent survives step two of *Alice* as

a matter of law. At minimum, NovaCloud's specific allegations in its First Amended Complaint create an issue of fact that precludes dismissal at this stage. *Aatrix*, 882 F.3d at 1126-27. Accordingly, this Court should deny IBM's motion to dismiss with respect to the § 101 assertions made against the '348 Patent claims.

## VI. PRE-SUIT INDIRECT AND WILLFUL INFRINGEMENT.

In an effort to streamline the case going forward and reduce the issues before the Court, NovaCloud will drop its pre-suit indirect and willful infringement allegations.[2]

## VII. CONCLUSION

For the foregoing reasons, the Court should deny IBM's Motion with respect to the '348 Patent. In the alternative, should this Court grant any portion of IBM's Motion with respect to the '348 Patent, NovaCloud requests leave to amend its complaint. *See* Fed. R. Civ. P. 15(a).

[2] In its motion, IBM does not ask the Court to dismiss NovaCloud's *post-suit* willful and indirect infringement allegations. For the sake of clarity, NovaCloud is not dropping these post-suit allegations.

Dated: December 2, 2025.

**McKOOL SMITH, P.C.**

/s/ *Kevin L. Burgess*
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@McKoolSmith.com
**McKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9002
Facsimile: (903) 923-9099

John B. Campbell
Texas State Bar No. 24036314
jcampbell@McKoolSmith.com
Stone A. Martin
Texas State Bar No. 24143713
smartin@McKoolSmith.com
**McKOOL SMITH, P.C.**
303 Colorado Street Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Nicholas M. Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Clara Bourget (admitted *pro hac vice*)
cbourget@McKoolSmith.com
**Mckool Smith, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Michael E. Catapano
New York State Bar No. 5933700
mcatapano@mckoolsmith.com
**Mckool Smith, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR PLAINTIFF NOVACLOUD LICENSING, LLC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on December 2, 2025.

*/s/ Kevin L. Burgess*
Kevin L. Burgess