**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NOVACLOUD LICENSING, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Case No. 2:25-cv-00700-JRG-RSP |
| | § | |
| INTERNATIONAL BUSINESS MACHINES CORP., | § | |
| | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. **Dkt. No. 48**. In its Motion, Defendant argues that all asserted claims are invalid under 35 U.S.C. § 101, since they are directed at the abstract idea of "monitoring and recording data relative to other data" and lack inventive concept. *Id.* at 6. For the reasons discussed below, the Court finds that the Motion should be **DENIED** with respect to § 101 and **GRANTED** with respect to pre-suit willfulness and induced infringement.

## I. BACKGROUND

Plaintiff alleges infringement of U.S. Patent Nos. 8,401,028 ("the '028 Patent"), 8,407,348 ("the '348 Patent"), 9,225,651 ("the '651 Patent"), 9,491,063 ("the '063 Patent"), 9,900,262 ("the '262 Patent"), and 10,691,480 ("the '480 Patent"). In its Motion to Dismiss, Defendant seeks to challenge the validity of the '348 Patent and dismiss Plaintiff's pre-suit willfulness and induced infringement claims.

The '348 Patent is titled "monitoring network usage," and seeks to monitor network usage to ensure compliance with "service level agreements." These agreements stipulate the terms in which the network service is provided, and establish "parameters and limits," such as network

traffic speed. The ’348 Patent’s background section lists several aspects of the invention, with each aspect describing several preferences on implementation. For example:

> Preferably the service usage indicator is software, although it may be hardware. Preferably the service usage indicator is located on a computer server of a network operator. ’348 Patent at 3:66-4:2.

The specification then discloses the means to measure this traffic information. Claim 1 reads:

> A method of monitoring a user's usage of a network service, comprising:
>
> > recording a length of time that a service in the network was considered active relative to a predefined activity threshold value;
> >
> > recording an average loading of the network service during the time that the network service was considered active relative to the activity threshold value; and
> >
> > recording a length of time in which the network service was considered saturated relative to a predefined saturation threshold value. ’348 Patent at 9:19-28.

Plaintiff’s complaint alleges infringement of the ’348 Patent by Defendant and provides a chart comparing Defendant’s products with Claim 1 of the ’348 Patent. *See* Dkt No. 1-8. Defendant’s Motion challenges the ’348 Patent’s validity on § 101 grounds. More specifically, it alleges that the entire ’348 Patent does not comport with the *Alice v. CLS Bank* two-part test and is thus not patentable subject matter. 573 U.S. 208 (2014). Additionally, they allege that Claim 10, and dependent claims 11, 13-15 and 17 are not patentable subject matter, because they lack a “physical or tangible” embodiment. Claim 10 reads:

> A communication network service usage indicator comprising:
>
> > an input configured to receive an activity threshold value, a saturation threshold value, and a recording period value; and
> >
> > a data collector configured to record
> >
> > > a length of time that the service was considered active relative to the activity threshold value;
> > >
> > > an average loading of the service during the time that the service was considered active relative to the activity threshold value; and
> > >
> > > a length of time in which the network service was considered saturated relative to the saturation threshold value. ’348 Patent at 10:10-22.

Moreover, Claim 10 and its dependents do not claim methods.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted" FED. R. CIV. P. 12(b)(6). A complaint states a sufficient claim if it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citations omitted).

When considering a Rule 12 motion to dismiss, a court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). The court must then decide whether those facts "state a claim that is plausible on its face." *Bowlby*, 681 F.3d at 219. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 556).

**B. § 101 Patentable Subject Matter**

*1. § 101 Statutory Subject Matter*

United States patent law defines what can be patented "positively" – § 101 defines what *is* patentable, rather than what is not. 35 U.S.C. § 101. The four categories "processes, machines, manufactures, and compositions of matter" define the entirety of patentable subject matter under United States patent law.

Conversely, a process, or method patent's claims must be confined to the act itself and cannot be directed towards the "ultimate product." *See In re Nuijten*, 500 F.3d 1346, 1355 (Fed. Cir. 2007). In *Nuijten*, the Federal Circuit deemed a patent not a process patent when it merely claimed an electrical signal was to be "encoded in accordance with a given encoding process." *Id.* The Court reasoned that because the claim merely required a thing – the signal itself – be transformed by a specific process, rather than claim the process itself, there was no proper process claim.

The remaining three categories require a patentee to claim a "physical or tangible" embodiment. *See Burr v. Duryee*, 68 U.S. (1 Wall.) 531, 570, 17 L.Ed. 650 (1863) ("a *concrete* thing, consisting of parts, or of certain devices and combination of devices.") (machine); *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) ("the production of articles for use from *raw or prepared materials* by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery") (manufacture); *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) ("the production of articles for use from *raw or prepared materials* by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery.") (composition of matter) (emphasis added).

A patent claim can cover multiple embodiments; however, all embodiments must be patent-eligible for the claim to remain valid. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1294-95 (Fed. Cir. 2017). *Mentor Graphics* is not broadly applicable, however. When a patent does not specifically define an ineligible embodiment, the court cannot presume the ineligible embodiment is included. *See Sequoia Technologies LLC v. Dell, Inc.*, 66 F.4th 1317, 1324-25 (Fed. Cir. 2023) ("[Plaintiff's] reliance on *Mentor Graphics* and thirty-four other patents and patent applications is misplaced. Those thirty-four other patents and patent applications expressly defined [a patent ineligible embodiment]. The [asserted] patent does not, and our holding relies on this absence").

*2. The Alice Two-Step Test*

Further § 101 caselaw has established four key exceptions to the "positive" model of United States patent law. These "patent-ineligible concepts" are specifically excluded from § 101 patentable subject matter, unless properly "transformed" into a patent-eligible application.

Under *Alice*, "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

At Step 1, the "directed to" inquiry begins by asking "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). "In conducting this inquiry, the focus is on the claim language considered in the light of the specification. *Id.* (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir.

2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The Supreme Court has cautioned against "overgeneralizing claims" explaining that "characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *TecSec*, 978 F.3d at 1293 (quoting *Enfish*, 822 F.3d at 1337)). Instead, the "Step 1 analysis . . . depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *Id.* at 1294.

In cases involving improvements to computing technology and networks, the Federal Circuit has identified "two inquiries of significance here: [1] whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers; and [2] whether the claim is properly characterized as identifying a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *Id.* at 1293.

## III. ANALYSIS

### A. Pre-Suit Willful and Induced Infringement

In its response (Dkt. No. 49), Plaintiff stipulates that it will drop pre-suit indirect and willful infringement allegations. Accordingly, the Court finds that Defendant's motion should be granted with respect to pre-suit indirect infringement and pre-suit willful infringement.

### B. Non-Statutory Subject Matter

In its Motion to Dismiss, Defendant alleges that '348 Patent claims 10-11, 13-15 and 17 are directed at ineligible subject matter, because they do not contain a physical embodiment, nor are they process claims, because they require no "series of steps."[1] Dkt. No. 48 at 4. They argue that because the specification does not contain any "physical or tangible limitations" the patents

[1] A process claim, unlike the other three categories of § 101 patentable subject matter, does not require a physical embodiment. Instead, it requires a "series of acts or steps."

do not contain a physical embodiment. *Id.* In its Response, Plaintiff argues that these claims "clearly require" computer software sufficient to meet the physical embodiment requirement. Dkt. No. 49 at 5.

The Court is not persuaded by Defendant's arguments. In *Sequoia Technology*, the asserted patent's specifications stated that the invention "can be embodied in hardware or software." The Federal Circuit found that a person of ordinary skill would understand that despite this language, the patent was directed at eligible subject matter. Defendant's argument should be judged by the claim's actual wording, not whether the '348 patent's background section can be read to disclose an ineligible embodiment. The "preferably" language from the '348 Patent's background section does not direct the claims to an ineligible concept.

Conversely, in *Mentor Graphics*, the Court was bound by the patent's lexicography. Therefore, the claim was held invalid because the patent *specifically claimed* an ineligible embodiment. Here, the '348 Patent's "preferably" language merely addresses the location of the server hosting the service usage indicator ("of a network operator"), not whether there is a server at all. Defendant has not come close to demonstrating by clear and convincing evidence, that the '348 Patent does not fall within patent eligible subject matter. Therefore, the Court finds that the asserted claims of the '348 patent are not directed to non-statutory subject matter under § 101.

### C. Patentability Under *Alice*

Defendant next contends the '348 Patent is not directed to patentable subject matter because it is an "abstract idea," a "patent ineligible concept" under *Alice v. CLS Bank*. 573 U.S. 208 (2014). Defendant argues that the patented invention does nothing more than collect data and lacks an inventive element because it does not "transform" the data into something more or different. Dkt. No. 48 at 6. Defendant argues that controlling Federal Circuit precedent has

previously found illegible patents that claimed methods of "collecting information…analyzing the information…and reporting the results," or recording collected information. *Id.* at 6-7 (*citing In re Gale*, 856 F. App'x 887, 888–89 (Fed. Cir. 2021)). Defendant notes that the claims at issue do not contain an analysis step – "even less than the ineligible claims" from several Federal Circuit cases cited by Defendant. *Id.* at 7. Defendant also argues that the claims at issue lack inventive concept since they merely require generic computing components to implement and they produce no improvement to the function of computers or any technological improvements. Dkt. *Id.* at 9. Defendant argues that Federal Circuit precedent requires the alleged "functional" claims to disclose how the function is achieved. *Id.*

In response, Plaintiff argues that the '348 Patent is not directed to an abstract idea, since it is directed to technological improvements in network monitoring. Dkt. No. 49 at 8. Plaintiff points to issues with prior art systems, which were unable to accurately measure network usage for compliance purposes. *Id.* Plaintiff argues that the patented invention's "continuous monitoring" solved this problem without the "exorbitant cost" prior solutions required. *Id.* Plaintiff contrasts Defendant's cited Federal Circuit caselaw as inapplicable, since in each case, the patents were not directed at technological problems, and instead directed at medical, logistical, or business problems. *Id.* at 10-12.

The Court is not persuaded by Defendant's argument that the '348 Patent is directed to merely an abstract idea and is thus ineligible under *Alice* Step 1. The '348 Patent's background section outlines the problems that make existing monitoring systems unfeasible – they either use too much system memory, or they sample data too infrequently to deliver meaningful results. The patent specification outlines, and the claims reflect, implementation of the '348 Patent's innovation, in that it makes feasible efficient network monitoring through its reduction in memory

usage. Thus, the Court finds that the claims of the ’348 Patent, viewed in light of its specification contain a technological improvement, and thus are not merely an abstract idea. Since the ’348 Patent is directed to a patent eligible concept, the Court finds that Defendant’s Motion to Dismiss should be denied with respect to § 101.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Motion should be **DENIED** with respect to § 101 patentable subject matter and **GRANTED** with respect to pre-suit willfulness and induced infringement.

A party’s failure to file written objections to the findings, conclusions, and recommendations contained in this report **by not later than September 28, 2026** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass’n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event “Objection to Report and Recommendations [cv, respoth]” or it may not be considered by the District Judge.

**SIGNED this 16th day of September, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE